Good morning, Your Honors. Kurt Hermanson on behalf of Mr. Felipe Zepeda-Martinez. I'd like to start with the Covian case, which requires reversal forthwith in this case because, as the pre-sentence report indicates, Mr. Felipe Zepeda-Martinez was arrested on September 5th, 2004. He's been in custody this entire time, so September 5th, 2006, he had already served a two-year maximum. I do have a 20HA and a copy of that opinion. It just came out August 31st, if the Court would like the 20HA and the opinion. What is the impact of the plea before the magistrate judge? I assume that was at arraignment? The guilty plea was taken in front of the magistrate judge and then accepted by District Judge Burns. But didn't he say yes, that he had been found in the U.S. September 5th and that he had been deported on or about May 21st? What he indicated was that on or about May 21st, 2001, what Pat was referring to was the date of the 273.5. The conviction that's at issue in this case was on May 21st. And so that's what the judge – I think the judge misspoke because that isn't when he was deported. That was when he suffered the 273.5 conviction, and he got two years and he wasn't deported on that date. So there's no record of the deportation, agreement as to the deportation date? The deportation was in 1997. There's no dispute that he was deported in 1997. What's at issue is a number of removals from the United States. In particular, in 2004, which is what the government was relying on, he was removed pursuant to an ultra vires procedure. So he was illegally removed from the country as far as the immigration law is concerned. That issue is currently before the en banc court. As of June 22nd, it's been pending, waiting for a decision to come out in the Morales-Esquerdo case. But the reasoning is the same, that it was an illegal removal. And as the Supreme Court said in Mendoza-Lopez, you can't increase someone's sentence exponentially, as 1326b does, based on an invalid or illegal deportation or removal. But I think more fun... I guess the question is that we don't... Doesn't that depend on where Morales-Esquerdo ends up? Yes, and there are two... We've got kind of two different things going on here that we couldn't... Depending on where the en banc court comes out in Morales-Esquerdo, he may or may not be advantaged. And we just don't know the answer to that yet. Correct, as far as that argument. There are really three distinct arguments. There's the Apprendi argument, the Morales-Esquerdo argument, and the aiding and abetting argument. The aiding and abetting argument is going to be argued before the en banc court October 5th. And that's the Vidal case. Correct. So, but both of those sticky issues can be avoided in this case, both the Morales-Esquerdo, which is en banc, and the Vidal issue, the aiding and abetting, can both be avoided because August 31st, this Court decided that Apprendi is limited to one fact and one fact only, the fact of a prior conviction. In this case, Mr. Zepeda-Martinez never admitted that he was validly removed from the United States after his 273.5. What he admitted in front of the magistrate judge, and it's clear from that transcript that we preserve all issues, including keeping the statutory maximum at two years, was that on or about May 21st. That was the date of his conviction, though. So on or about could have been the day before. He never admitted that he was actually legally deported after that date. In admitting 1326 and the elements of 1326, his deportation was 1997. There's no dispute about that. That's when he was legally deported. But for the enhancement under 1326b to apply and to increase the statutory maximum from two years to, in this case, 20 years, the government has to prove that subsequent to his aggravated felony, he was legally removed from the United States. And the date of that removal and the fact of that removal is – has to be either found by a jury or admitted in the court. And he never admitted that there was a legal removal past the date of his aggravated felony. What is the implication of this case? Does that mean that defendants can now require – I mean, they could almost force every 1326 to trial by simply not admitting the date of the prior deportation. The practical implication is that the government will require defendants to admit that they were removed – legally removed from the country after their aggravated felony in order to take advantage of a plea agreement that's advantageous to them. So what – because the two other issues really can't be discussed here until we have the final resolution of the in-bank court, so why don't we hear from the government now, because it's a fairly narrow issue. And I do have copies of the Covian opinion. It's the court. You can provide those to the clerk. I think we may have them, but you might as well provide extra copies to the clerk and he'll distribute them to us. Good morning, Your Honors. May it please the Court. Mark Rahe for the United States. First off, Your Honors, as far as this Morales-Laschiere issue, I wanted to make a point before I went on to Covian-Sandoval. Defense counsel has indicated it's the government's burden to prove that a defendant was lawfully removed. That's actually not the state of Ninth Circuit law. And I believe there was an en banc case called Alvarado-Delgado, which says that it's not the government's burden to prove a lawful removal. It's simply a burden to prove a removal. But this Court, if it gets to this issue, does not need to await the outcome of the Morales-Laschiere en banc case, because as we point out, we rely on a case called United States v. Luna-Matalaga. The government's position is whether or not reinstated removals are found to be lawful. The actual sentencing guideline enhancement under 2L1.2 doesn't require a lawful removal. It just simply requires a physical removal. And we spell that argument out in our brief. So it's our position, at least with reference to that Morales-Laschiere issue, this Court does not need to await the outcome of the en banc case, because in Luna-Matalaga, the Court basically held it was over dissent, Judge Thomas dissented, but that still is the state of the law, that it's just simply physical removal that's required for that enhancement. But now, as far as the Covey and Sandoval issue is concerned, the government basically has two arguments. And this is sort of an unusual thing. I mean, how Covey and Sandoval will be treated on a going-forward basis is one thing. As defense counsel suggested from now on, the government will be alleging this in the indictment, will make it a term of a plea agreement. But what do we do with these cases that are already in the pipeline, such as this? Well, we look to the actual, the unique facts of the record. In excerpt of record, page 19, this is sort of an unusual fact here. This defendant, at his plea colloquy, he's under oath. He's asked had he been previously deported on or about May 21st of 2002. And he says very clearly, yes. Now, it is ironic, in this case, the 273.5 conviction, the domestic violence conviction, was, in fact, incurred on that same date. And you can see that from the supplemental excerpt of record, page 11. That is the judgment. But here he's basically admitting that he was removed on the same date that he incurred that conviction. On this fact alone, this Court can find that when, I mean, if two things happen on the same date, the conviction, by definition, has to have come first. Because if he's already been removed, he can't be convicted. But then he's saying on or about is not the same as on. Well, true. But I would also say, I mean, I think under the law, on or about means approximately. And he's basically admitting this. I think this gives the district court the ability then to find the actual date. I mean, I would. Sotomayor, so what, let me just make sure. So you're saying that somehow his admission within some ballpark changed the rule of the Covina case? I'm not changing it. And then he shipped it to the judge? Well, basically. I mean, Covina basically is saying, okay, Apprendi now applies to the date of removal. And as we all know, Apprendi, there's two ways to satisfy Apprendi. Either prove it to a jury beyond a reasonable doubt, or the defendant admits it.  The first removal was in 1997. And you see this in the briefs. The most we ever admitted to was 1997. Well, here you have him admitting that he was deported on or about May 21st. And then two questions later, the court says, after May 21st of 02, did you receive permission to enter the United States? No. So when you read those two questions in conjunction, I think it's a fair inference for the district court at that point to find that he was deported after that date. And we cited a case, United States v. Silva, in our papers. When a defendant pleads guilty to some extent, he waives the identity of the factfinder. And in this case, when you plead guilty, he can't now claim that a jury should have found this when he admits to the judge, I've been deported on or about May 21st of 2002. But these try to – I guess I'm still having some trouble. You know, we haven't had occasion to apply Covina and Sandoval yet. But if I read it, it says the fact of a prior conviction is the only fact that can be found by a sentencing court. And you're now saying, well, this fact falls in some middle ground. In other words, you have half admission and half sentencing court, so one and one equals a complete admission. Well, I don't know if I'm quite seeing that, Your Honor. I mean, I think it's one or the other. Before, let's say drug case, drug quantity, 50, 100 kilograms of methamphetamine. It used to be that that was just a factor. Now, if you want, it's going to increase the, you know, the statutory maximum. That's something that defendants can admit in a plea colloquy. And when they do, this Court – and that's the Silva case – this Court has found if you admit it in a plea colloquy, it satisfies a prendi. Well, now we're back to a different – that's a different question then. Because you're saying, well, then the sentencing judge can draw inferences. The real question then is, did he admit here in the plea the fact that we need to sustain the conviction – I mean, to sustain the sentencing scheme? I think on its face he has, when he says, Honor about May 21st, because if that's the same date he got the conviction, you can't have – you can't be convicted if you've been deported. So I think from that, the conviction has to have come first, and then came the removal. What would be the remedy? What is the remedy under Covian, Sandoval? Unclear at this point, Your Honor, because Covian was a plain-error case. And here we will – there's no dispute that the defendant actually preserved this error. But we would ask if worse comes to worse, I mean, that this case be remanded then, and that we then be allowed to have a sentencing jury. Because in some respects, otherwise it's going to lead to a kind of gamesmanship. And the ironic fact of this case, this case was indicted shortly after Blakely, I believe, but before Booker. The indictment, as shown on Excerpt of Record, page 2, originally included a special allegation. Right. And then it was removed. Right. And then it was removed after Booker. So the defendant – Yeah. And I can't argue that that happened. But it's ironic that in one hand the defendant, you know, we bothered to put the special allegation in. He knocks it out. And now on sentencing he's saying, oh, well, you know, you didn't find the actual date. Well, that's what we originally apparently wanted to do. And I think what happened was after Booker came out, the government believed that, you know, this kind of a thing still came within Almendar's term. Well, I guess the other thing is that people will quit talking in police testifying talk, which is honor about such-and-such a date. You know, I mean, that's one of the problems. That could be as well, Your Honor. But, you know, our argument, too, with Covian is basically two-pronged. First, we have this argument that as shown on Excerpt of Record 19, he is admitting that he was deported on or about May 21st. Now, I think there's also a question as to whether a Covian error is still subject to harmless error review. And even though Covian was a plain error case, it's interesting at page 7 of the opinion, when they are analyzing the substantial prejudice prong, they quote harmless error language. They basically say, well, in this case, the date of removal now, because it can increase the statutory maximum, is the equivalent of an element. And then it draws on long-standing law that when an element is not sent to the jury, it can still be subject to harmless error review so long as there is uncontroverted evidence supporting that element. And that, of course, comes from Nieder v. United States. It's a Supreme Court case, 527 U.S. 1 at page 18. And I'm quoting here from the Covian-Sandoval opinion. And again, this is at star 7. It has the pagination because it hasn't been given an F-3rd cite yet. It says, This inquiry directs us to consider the fact improperly found at sentence, and quote, is the equivalent of an element of the offense on which the jury was not instructed, end quote, such that we must, quote, inquire whether it was clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error. And they cite the case Minori, which then says internal quotation marks and citations omitted. When you look that up, it's the Nieder case. And I think basically the difference here in Nieder, again, when you look, even if you don't send an element to the jury for proof beyond a reasonable doubt of the guilt of a defendant, it can be subject to harmless error review. If you apply that analysis here, and again, this is where I feel like we're almost through the looking glass, Podian says jury needs to find this fact basically. There's no real dispute here. Defendants, you know, we adduced evidence at sentencing. And this is at Excerpt to Record, pages 59B and 59C. This is the warrant of removal, stated June 17, 2004. It has defendant's photograph, his fingerprint, his signature. And I'll also point out that the defendant, although he objected to, made legal objections based on this kind of issue, he never actually objected to the statement in the PSR that he was removed several times after this conviction. And at Supplemental Excerpt to Record, page 14, it sets forth his specific objections. The only thing he objected to was the other law enforcement contacts. So in this case, you have uncontradicted evidence of a warrant of removal that post-states his 273.5 conviction. He never files a factual objection to the fact that he was deported after that date. He doesn't adduce any contrary facts that he was removed after that date. In the district court, I would note at Excerpt to Record, page 59A, didn't just rely on the PSR, but he made our documents actual part of the record. And this is why when we argued in our brief that even if Apprendi applies, that has to satisfy the beyond-a-reasonable-doubt standard. And again, we draw on this from Nieder v. United States, where it says, even if it's the government's burden to prove harmlessness, in assessing whether harmlessness has been proven, you look to see whether there is any contrary evidence. And in this case, there is none. But is this a harmless error analysis, or is it structural because it's an element of the offense? I think it's harmless because that's what Nieder says, is even if an element doesn't go to the jury, it's subject to harmless error review. The data removal now, while not an element, is the equivalent. A sentencing factor that increases the statutory maximum, I think they're supposed to be treated the same way. So it would be the government's position that even if this claim was preserved, if you apply the harmless error analysis under Nieder, it's clear beyond a reasonable doubt that had this gone to a jury or had the defendant waived the jury and asked the judge to find it, we have reasonable doubt that he was removed after May 21st of 2002. I know it's a new issue, and there's the allusion to Nieder. Do we have in any other context the application of Nieder to a sentencing factor that's equivalent of an element? Any other cases that you can think of? Not off the top of my head, Your Honor. And there may not be any yet, given the shifting structure of the sentencing  Thank you. Okay. And nothing about the aiding and abetting? No. We have that quite in mind from the briefs. Okay. Thank you. Thank you. One thing that would be helpful for you to address is the government's argument that this is harmless error and that we should, that that standard would be applicable here. Nieder is distinguishable because that was a jury case, and this is a case where as Covian says, either the fact has to be proven, the fact of the removal has to be proven to a jury or admitted to a judge. Never did Mr. Zepeda-Martinez admit that he had a removal after his aggravated felony. Quite the contrary. And I take exception to the argument that it wasn't objected to. There was, that's what this case was all about, was objecting to whether or not he was removed. And under Morales-Escarido saying that the removal was invalid and the sentencing papers that were filed and are part of, are before this Court in the government's supplemental excerpt of record at page 18, for example, talks about how we did say that under Apprendi, the date of the deportation or in this case removal, is something that has to be found by the trier of fact and simply was not found in this case. And as far as it being, even if a harmless error analysis were to apply, which it doesn't, and I can submit a 28J with cases indicating that when it's an element of the offense, clearly it has to be found either by the trier of fact, either by a jury or a judge. In this case, clearly the Court's analysis, Judge Burns below, shows that exactly what happened and how it couldn't be harmless. He says that he reviewed the documents that Mr. Rahe refers to. The scenario in this case is as follows. Mr. Zepeda was deported in 1997. I find that that occurred. He has pled guilty and admitted to the deportation. So while he may have challenged it at one point, he later gave up his challenge by pleading guilty and admitted that he had been deported. That doesn't resolve the issue before you today, speaking to Ms. Sullivan, the prosecutor. The statute requires for this to be an aggravated felony, or for him to be punished for an aggravated felony, that he must have committed the underlying felony offense before the last removal. Mr. Hermansen said, we are not going to admit that Mr. Zepeda Martinez was removed after May 21, 2002. And that's where the words on or about are crucially important in this case. The government has to prove beyond reasonable doubt that he was removed after that date, not on or about, not before, after. And he did not admit, nor did a jury find, that he was removed after May 21, 2002. So that was in dispute, whether or not he was removed and the conviction was entered. Because he didn't think the 2004 reinstatement and removal were valid in light of Morales Esquerdo. The Court has looked at the Luna case, and based on Luna, finds that the Court can focus on the physical removal itself. And Mr. Rahe talks about how physical removal is fine, even if it's illegal. That argument flies in the face of the United States Supreme Court case Mendoza-Lopez, where the Supreme Court said, specifically talking about 1326, and saying that there is a due process analysis that has to go into this. Before a criminal court can greatly increase someone's sentence based on an administrative proceeding, that administrative proceeding has to have due process. And then that's when we start getting into the Morales Esquerdo issue, whether or not this removal that did not happen in front of an immigration judge, in which en banc is being decided if that's ultra vires, whether that was invalid. Obviously, that kind of removal is not that, although, you know, he's being physically removed from the United States, that can't then be used in the criminal context to greatly increase someone's sentence. Thank you.
judges: Hall, McKeown, Wardlaw.